## FRANZETTI v. FRANZETTI.

### No. 9369.

Court of Civil Appeals of Texas. Austin.
July 28, 1943.

Cofer & Cofer, of Austin, for appellant.

George S. Dowell and Hart & Brown, all of Austin (by J. H. Hart, of Austin), for appellee.

BLAIR, Justice.

In 1933, Gertrude Franzetti sued Guiditta Franzetti in trespass to try title to recover the property in controversy, a house and lot in Austin, Texas. Specifically, she asserted title under an alleged parol gift of the property to her by Angelo Franzetti, her father-in-law, and the deceased husband of Guiditta, which property was to be used, under the terms of the gift, as the home of Gertrude and her infant son, Willie Louis Franzetti, the grandson of the donor; the gift being alleged to have been made in 1930, at or about the time of the birth of the said Willie Louis Franzetti. On the trial, Gertrude and her mother, Dora Mussett, who lived with Gertrude on the property, testified that all of the improvements thereon were made in 1932, or subsequent to the death of the donor in 1931; and at the conclusion of the evidence the trial court instructed a verdict and rendered judgment for Guiditta, upon the ground that the improvements made after the death of the donor would not suffice to take the alleged parol gift of the real property out of the operation of the statute of frauds; which judgment this court affirmed on appeal. See Franzetti v. Franzetti, 124 S.W. 2d 195, writ refused, for a full statement of the nature of the suit and the facts thereof.

After the mandate reached the trial court from this court a writ of possession was issued and placed in the hands of the sheriff for execution; but before he could execute the writ Dora Mussett, the grandmother of Willie Louis Franzetti, filed this suit, as his next friend, against Guiditta Franzetti, alleging that said minor was not a party to the former suit of his mother, and that the parol gift to him was the result of the same words spoken by Angelo Franzetti at the same time he was alleged in the former suit to have given the same property to Gertrude. This is the suit here involved, and which resulted in the trial court in a special issue verdict and judgment in favor of Guiditta Franzetti.

On the trial of this case Gertrude Franzetti and appellant, Dora Mussett, testified that all of the improvements made on the property and relied upon to take the parol gift out of the statute of frauds, were made prior to the death of Angelo Franzetti, the donor. They admitted on cross-examination that each had testified on the trial of Gertrude's case that the improvements relied upon were made after the death of the donor; that at the time each so testified she had been told by counsel in the case that the parol gift would not constitute a conveyance of the property unless the improvements were made prior to the death of the donor; that each discovered

"two or three days" after the judgment was rendered against Gertrude by the trial court, through one Stout, that same were made during the lifetime of Angelo Franzetti, the donor; but that the discovery of these facts was too late to be availed of in that case; and that each knew, under the former decisions of the trial court and of this court in Gertrude's suit, that each of them had to change her testimony on the former trial and testify that the improvements had been made prior to the death of Angelo Franzetti, in order for Willie Louis Franzetti to recover in this suit.

After the foregoing testimony was in, appellee, over the objection of appellant, introduced in evidence for the purpose of showing the motive of Gertrude and appellant in so changing their testimony given on the former trial, the pleadings, the instructed verdict, judgments, motions for a new trial and orders overruling them, and the portion of the judgment of this court holding that Gertrude failed to establish the parol gift of the property to her because her undisputed evidence showed that the improvements were made after the death of the donor.

By her first five points appellant complains of the introduction of the foregoing matters in evidence, contending that Willie Louis Franzetti was not a party to that suit and that the matters were not material to any issue in this suit, and were highly prejudicial. Neither contention is sustained.

The fact that Willie Louis Franzetti was not a party to the former suit of his mother for the same property resulting from or under the same parol gift is not material with respect to the admissibility of the records in question. He relied upon the testimony of his mother and grandmother in order to recover, which testimony each admitted was contrary to and directly opposite to the testimony given in Gertrude's suit. They sought to explain this error by showing that they learned after the former trial, and from a man who died prior to the trial of this case, facts which caused them to know that their testimony given on the former trial was incorrect. This was a plausible explanation, which appellee was entitled to refute by facts tending to show other motives or reasons why they changed their testimony. The record and decisions in the former case, holding that Gertrude could not recover the property under their former testimony, were clearly admissible as matters showing the motive for changing their testimony and as affecting the credibility of these witnesses, all of which were matters for the jurors to pass upon in determining the issues submitted to them.

Appellant contends by Point Six that the court erred in admitting in evidence certain testimony of Lillian Caldwell, a witness for appellee. She testified as follows:

"I know Mrs. Gertrude Franzetti and her record. I have seen Gertrude Franzetti at Angelo's home, not once but many times. My house is just across the street from Mrs. Franzetti's house, that street would be 40 or 50 feet wide. I have seen Gertrude at Angelo's house, before he died and after. I could hear what was said as plain as I hear you. The first visit she ever made out there was on Sunday between 9:30 and 10:00. I was standing on my front porch watering the flowers and I saw a car drive in the driveway. I didn't pay any attention until I saw a man's shirt and she kept throwing things out of the automobile; the little boy was small and he was running and picking up things she threw out. Finally Louis showed up when he got on the runningboard of the car and he said, 'No, no, don't throw my things out.' There was some man in the car with her, with this woman, Mrs. Gertrude Franzetti. Louis came from around by the big oak tree. She used cursewords on him, she has the worst tongue I ever heard in my life. Everyone could hear what she said. That was on Sunday morning. She (stayed) until Joe came from the store and old man Franzetti came. He asked her to get out of the yard, not to raise such excitement. He said, 'I never had anything like this happen before at my home.' She cursed him and called him a damned nigger-lover, that woman. There was somebody with her, he got out of the car. Joe made them get out of the yard.

"Oh, Lord, I couldn't begin to name the number of times I saw her around there after that time. I have known her to come at 8:00 o'clock and sit down on the back steps and cuss. She and Louis would fight awhile; if anybody came out she would cuss them. That was at 8:00 at night and she would stay until they got officers to put her out; they had to get officers.

"Those things occurred while Mr. Franzetti was alive and they occurred frequently and I saw and heard them from my residence."

■ The court should have sustained the objections to all of this testimony except that part relating to the time Angelo Franzetti asked her to leave and her reply to him. Manifestly, her private fusses, her cursing others, including her husband who had separated from her, and her fighting with him have no bearing upon any issue in the instant case, and were therefore immaterial and highly prejudicial. It also injected, as contended by appellant, issues as to Gertrude Franzetti, who was not a party to the suit, which were inflammatory matters concerning her personally, attributing to her discreditable acts and conduct, and inferring probable immorality on her part, none of which had any bearing on the case. The law is settled that in a civil suit a witness may not be impeached by proving discreditable acts, or even immoral acts, which have no bearing on the issues involved in the case. Impeaching evidence must be limited to witness's general reputation for truth. Missouri, K. & T. R. Co. v. Adams, 42 Tex.Civ.App. 274, 114 S.W. 453; Moody & Co. v. Rowland, 46 Tex. Civ.App. 412, 102 S.W. 911; Hazard v. Western Commercial Travelers' Ass'n, 54 Tex.Civ.App. 110, 116 S.W. 625; Hays v. State, 90 Tex.Cr.R. 355, 234 S.W. 898.

■■ The portion of the testimony relating to the time Angelo Franzetti ordered her to leave, and her reply to him, was admissible to offset or to impeach the testimony given by her to the effect that at all times the relationship between her and Angelo Franzetti "was fine"; that he treated her "very nice, and he was always considerate and friendly towards me, and I looked upon him as a father"; that "Mr. Franzetti treated me nice, I have no complaint against him." She further testified that Angelo Franzetti visited her frequently and was affectionate toward her and her son. This testimony tended to show that Angelo Franzetti under the circumstances would desire to give her and the child the property in controversy. It necessarily follows that testimony which tended to show that such relationship did not exist between Gertrude and Angelo was admissible. It was the same sort of testimony that was properly introduced showing that Gertrude had on October 25, 1930, filed a suit against Angelo for $50,000 damages, which suit was pending at the time of the trial, in which she alleged "that on September 2, 1930, and divers and sundry days for several months prior thereto," Angelo Franzetti, actuated by hatred and malice toward her, had conspired to take her husband away from her, and that as a result of "the wicked conceptions and conspiracy and threats to disinherit" Louis Franzetti, the said Angelo Franzetti had "wickedly, maliciously, and malevolently caused the said Louis Franzetti to voluntarily abandon" the said Gertrude Franzetti on September 2, 1930. These matters were admissible for the purpose of showing that the good relationship testified to by Gertrude did not exist, and to impeach the testimony given by her.

■ By Point Seven appellant contends that the court erred in "admitting the harmful, highly prejudicial, hearsay, secondary and self-serving testimony of Joe Franzetti," a son of Angelo Franzetti, which was in substance that he went with his father to the office of the lawyer who was representing his father in the lawsuit for $50,000, which Gertrude had filed against him, and at which time his father asked the lawyer, "when are you going to get them out," meaning, when was he going to get Gertrude out of the property in controversy. He further testified that his father had theretofore employed the lawyer to represent him in both of these cases.

The testimony that the alleged donor, Angelo Franzetti, prior to his death, had employed a lawyer to obtain possession of the property alleged to have been given to Gertrude for the use of herself and her son, appellant here, was admissible as tending to show that the gift of the property had not been made, or, if so, facts existed which neutralized the effect of the gift. Dreyer v. Southard, Tex.Civ.App., 148 S.W. 1103. Possession of the property under the gift with the consent of the donor was an issue in the case, and statements and acts of the donor tending to show that the possession was without his consent and contrary to his wishes, were material and admissible. Such testimony was also admissible to refute the testimony of Gertrude that she had been in possession with the consent of the donor.

By Point Eight appellant contends that the court erred in refusing to submit requested issue 5, which reads: "Do you find from the preponderance of the evidence that Angelo Franzetti knew of the extreme helplessness of his grandson, of the lack of means of his mother and of his total dependence and that in view of these special circumstances desired to provide for his grandson, and made the gift, if he

made it, in order to provide a house (home) for his grandson? Answer 'Yes' or 'No'."

■ To establish the alleged parol gift it was necessary for appellant to prove "(1) A gift in praesenti; (2) possession delivered by the donor at the time of the gift; and (3) substantial permanent improvements placed on the property by the donee, in reliance upon the gift, with the knowledge or consent of the donor; or, without such improvements, the existence of such facts as would make it a fraud upon the donee not to enforce the gift." Franzetti v. Franzetti, Tex.Civ.App., 124 S.W.2d 196.

■ The issue requested was merely evidentiary of these elements of a parol gift, and in consequence a charge upon the weight of the evidence, and therefore properly refused. Testimony that Willie Louis Franzetti was the grandson of Angelo, was an infant in a somewhat helpless condition because of the separation of his mother and father, was admissible for the purpose of showing that such matters may have influenced Angelo to make the alleged gift; and were matters of evidence and not the ultimate issue for the jury to determine. Such evidence was proper for the jury to consider in determining each of the seven issues submitted to them, and which appellee states the substance to be (1) whether Angelo Franzetti spoke the alleged words of gift; (2) whether the appellant occupied the property under a claim that Angelo Franzetti had given it to Willie Louis Franzetti; (3) whether Angelo Franzetti knew prior to his death that the property was occupied by Willie Louis Franzetti under a claim that the property had been given by Angelo Franzetti to Willie Louis Franzetti; (4) whether substantial improvements were made on the property during the lifetime of Angelo Franzetti; (5) were the improvements made in reliance upon the gift; (6) did Angelo know that the improvements were made on behalf of the alleged donee (7) under a claim that Willie Louis Franzetti owned the property because of the alleged gift? The jury answered each of these issues "No," or favorably to appellee, Guiditta Franzetti.

■ Point Nine, contending that a new trial should have been granted because of misconduct of the jury, is sustained. Having reversed the case on another ground,

this point need not be discussed at great length. Suffice it to say, it is fairly evident from the testimony of the six jurors on the motion for new trial that the jury discussed the case from the standpoint of whether appellant or appellee should win, and agreed that if the first issue were answered "Yes," then all the remaining answers should be "Yes," so that appellant might win; or, that if the first issue were answered "No," then all issues be answered "No," so that appellee might win. The jury stood 6 to 6 on the first ballot, and had great difficulty in finally agreeing to answer all issues "No." During the arguments in the jury room, one juror told another that he knew appellant, Dora Mussett, was a "hell-cat"; another juror told him, in substance, that he had had trouble getting possession of property from people like these; another stated that it made no difference how the jury answered the questions, it would do no good, because they (Gertrude and her son) would remain in possession anyway. One juror, who held out longer than the others before he answered the questions "No" so the appellee could win, stated, according to some of the jurors, that he could make more on the jury than he could off of it, and intended to hold out another day to make the additional per diem. Some of the jurors then offered to pay him the additional per diem if he would agree with the remainder of the jurors. One of the jurors had received his notice to appear for induction into the military service, and he and the other jurors insisted that the two jurors last agreeing to answer all questions "No" should vote "No", in order that this juror might spend one night at home with his family before going into the military service. The foreman urged this fact on several occasions to get the jury back to a discussion of the case, stating that the jury should decide the case so the soldier juror might spend the night with his family. Two of the jurors stated that they agreed to the answer "No" upon this consideration, believing then and now that the boy should win the case. This evidence required a new trial because of misconduct under Rule 327, T.R.C.P., which reads: "Where the ground of the motion is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury or that they received other testimony, the court shall hear evidence thereof from the jury or others in open court, and

may grant a new trial if such misconduct proved, or the testimony received, or the communication made, be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party."

The judgment of the trial court is reversed and the cause is remanded.

Reversed and remanded.